May it please the Court. My name is Martin James Martinez. Since this is the first time I address this circuit, any faux pas I commit, past, present, or future, should only be attributed to counsel, certainly not to petitioners. I would like to reserve about two minutes from my argument for rebuttal. Eminent justices, a relief we seek is that this Court grant petition for review, reverse the Board's denial of the motion to reissue, and remand to the Board so that they may consider the merits of the petitioner's cause. Hopefully the Board will reconsider their decision and allow the petitioner to remain in the country. My counsel, let me just ask this question. Is it your claim that the BIA abuses discretion in failing to hold an evidentiary hearing into the date on which petitioner's attorney received the BIA's decision? You know, not exactly. I think the more the more claim I think what I would like to address is that basically under the salted decision, which I basically base my argument on that, that the notice of the hearing, number one, should have been sent by certified mail, and number two, more importantly, it was only sent to petitioner's counsel, not the petitioner. And I think even a criminal in the most dire murder case, your Honor, would have at least a right notice of a hearing. So I'm just saying basically that before the government can remove a petitioner who's been here many years with four U.S. children, a home, that at the minimum of due process, they should be advised of a hearing. Now, the whole merit, of course, or the merits of the case is that petitioner's counsel, Ms. DeVia, had basically received notice that is no dispute. And there is no dispute that the petitioner has received notice. What is a dispute basically is that counsel basically had said, although they received it, she saw a step, she didn't receive it to her office, you know, much time later. Had it been certified mail, return received, requested, the issue would have been moved. Had the petitioner received notice, then two people would have received it, then we would not be here arguing. Are there, let me ask you this, are there any sworn statements or any other kind of admissible evidence indicating that the notification of the decision arrived too late to respond to it during the appropriate time period? Any sworn statements? Not that I'm aware of, Your Honor, but there was, of course, the moving papers by the petitioner's counsel, and I would also like to be. Which are unsworn, right? My understanding, Your Honor. But, Your Honor, followed by logic. Counsel. Okay, talk to us. Don't keep pointing in the audience, okay? Let me get my first time addressing. Your Honor, if the issue was misrepresentation as a government by any window applies, the last place counsel would want to be is this courtroom. As an officer of the court, she knows that any misrepresentation could be disbarment. Your Honor, we're not saying the post office didn't say it. It's a gigantic organization, Your Honor. Mistakes happen all the time. There's no crime in it. All right. But let's look at what we have in this case. It's my understanding that it's the burden of the contrariousness to show that the notice was not timely received. If there is no evidence before us to back up that legal theory, why should we even give you an evidentiary hearing on that point? The reason being, Your Honor, we are never saying it was not received. We're merely saying it came late to our office. That's all we're saying. But not in anything sworn? Your Honor, I think, as I mentioned, counsel is here. I mean, a simple question from her. No, we can't take evidence here. You know that. It's an appellate court. Your Honor, then I'll answer your question. No, there isn't. And I still think under the Salta case, I don't believe it's required. I think Salta basically, this circuit addressed that issue when the law changed, because under the old law, it was certainly a certified return receipt. And Salta basically is looking at the statute now and saying you still require it. In addition, I think however we slice this case, my argument is before the government is allowed to basically split a family at its seams or by de facto deportation, send U.S. citizen children to a foreign country, at the minimum, give them every guaranteed right. Even the most ardent supporters of closed borders would say, OK, fine, person should be here. OK, fine, let's give them a full hearing. OK, that's our asking for this court to remand. Once again, have the board look at the medical evidence. If the board at that point feels that there's no hardship, that's an argument for another day. But at least they had that particular hearing. And I think the government. Counsel, may I interrupt for just a moment? Sure, Your Honor. Because your time is fleeting. You keep referring to the Salta case, which does not appear to support you at all. In the Salta case, it said, because basis for lack of notice was not presented to the IJ or the BIA, we will not consider it. Your Honor, the reason I bring up Salta, because I was appointed amicus by this circuit. They wanted me to address Salta. My understanding of Salta, it was reversed, Your Honor. I thought it was favorable for the client. That was my understanding of Salta. I thought it was a favorable ruling. Proceed. All right. Your Honor, of course, in terms of jurisdiction, the government has cited, I believe, the Stone case. And I guess if the court agrees with that Stone decision, which is U.S. Supreme Court, by jurisdiction, we shouldn't be here. However, I think this circuit in Oscar Scoop, asking the Oscar Socop Gonzalez, filed and argued, filed December 5, 2001. The Ninth Circuit of Pasadena addressed the Stone issue and found it didn't apply to that particular pattern. So this is not the first time Stone has been raised by the government, but Stone did not preclude. Because the Stone is saying it's the consolidation, but Stone did not apply to this fact. And I'll tell you why. Stone was a Canadian lawyer, businessman who came to this country, committed fraud, went to the penitentiary. He not only betrayed the profession, he betrayed his clientele. Our Petitioners are hardworking people. Stone was a criminal deportation. This is not a criminal deportation. And I will say that that should be distinguished. And I would at this point reserve and reserve the balance of your time, if you'd like. All right. Thank you. Thank you. Good morning, Your Honor. Good morning. May it please the Court, Arthur Rabin for the Respondent, Attorney General. The government's position is this. There are two jurisdictional bars, and certainly those apply in this case, we believe. Even if this Court finds that they do not apply, there was no abuse of discretion and certainly there was no due process violation. The first jurisdictional argument we have is this. The board's decision not to reissue its own decision was not a final order of removal, as it is understood under the jurisdictional statute here, 8 U.S.C. 1252A1. Well, you argue that there's no final order in this case, decision in this case, but isn't there nothing left to do except execute the judgment? Well, that's correct, Your Honor. I mean, there is. So why isn't it final? I mean, what more has to be done? The final order of removal was the denial of the previous decision of the board, which was denial of the motion to reopen. It was filed by the Petitioners. Because the Petitioners apparently don't know when they received this denial of motion to reopen, they moved the board to reissue its decision so they could file, I guess, a PFR to this Court. The decision that the board issued was basically saying we don't feel the need to reissue our decision. All the issues that are dispositive of the case are already done. The only thing is the administrative decision was made not to reissue, and that's all. However, to the extent that Petitioners are arguing that the board should have reopened using its own powers to reissue its own decisions, well, that's precluded by this Court's Kinnian case, which we cite in our brief. So those are the two bars we rely on. Didn't the Singh case say that this was a final order of removal? Wasn't it almost the exact same procedural posture? No, Your Honor, because in the Singh case, there was a motion to reopen filed, if I remember correctly. But this is a motion to reopen and reissue as well, isn't it? But here, the difference is this. If Your Honor is referring to, and I think it's 469 F3rd 863 Singh, if that's the case we're talking about, which was just decided last November, in that case, there was not only a motion to reopen filed with a motion to reissue, but there was a sworn affidavit giving some semblance of facts to this motion. In our case, all we have is the bald allegation of counsel that actually says nothing. It basically, in a one-sentence motion, says we did not, the post office did not deliver until such and such a date, please reissue your decision and stay removal. There was no sworn declaration or a sworn affidavit. There was no allegation that it was misdelivered or any kind of change of address or that it was not even delivered on time. So Singh is, I think, materially different from the posture of this case, because here, not only are there no factual, there's no factual support for Petitioner's motion, but the motion itself is, it claims no error of law. It makes no allegation of error on the Board's part or anybody else's part. It basically just administratively requests a reissuance of a decision that had been formerly issued. So to say that somehow that's a due process violation because they did not receive it, assuming they're relying on SALTA, which we believe is inapplicable in this case, because SALTA deals with a situation that deals with in absentia removal orders before an immigration judge under a completely different regulatory scheme for reopening. And in that particular case, there was a sworn affidavit, or at least the court in his decision said a sworn affidavit is required to rebut the presumption of regular delivery by the post office, which we don't have here. So if we even use SALTA and somehow rely on SALTA, that there is a presumption, maybe not as strong as if it was by certified mail, but there's still some presumption that post office workers perform their duties in a regular manner, there is nothing to rebut that presumption. So to say that SALTA is somehow dispositive here, we would disagree. Subject to the Court's questions. We don't have any further questions. Thank you for your argument. Your Honor, when I was appointed by this Court, they asked me to address SALTA. Counsel in the response papers, in a sense, said a lot of the moving papers were just talking about why talk about cases that were in absentia. SALTA was in absentia. Why is it so applicable here? Because I think it's the spirit we're talking about. They talk about we didn't get notice, that it's not a notice issue. But I believe counsel, although she didn't sign the affidavit, her past experience is she filed the petitions to the BIA, either grant or reject without the affidavit. But in any event, let's say that she should have done that. Then I would ask this Court to look to our companion State appellate courts. At the court, at the appellate level or the court level, they, the presumption is that you rule on the merits of an appeal, that you don't dismiss for defect. What the State appellate courts have opined that any mistakes by counsel should not be attributed to a petitioner, basically an appellate. They tend to go to the merits. I will ask this Court to look at the merits and to ask Judge Nielsen's query of me earlier, although what I did want out of this hearing is basically some type of precedent that in all future removal proceedings, certified mail should be the guide. However, that may or may not be the intent of the statute. However, under SALTA, it is an evidentiary hearing. Yes, I would like an evidentiary hearing for all the issues that everyone in this court would like to know about why the affidavit was or was not filed. And then lastly, I would just, you know, I guess conclude with a quote in the classic treatise, The Art of Advocacy by Lloyd Paul Stryker. He states, the law is not an exact science. At the most, it is a kind of guiding star whose light suggests rather than defines the way. The star's guidance that my client thinks, my petitioner thinks today is just simply another chance to not be deported based on a defect. It's as simple as that. I mean, if it goes back to the eye, how much time is it actually losing? It remasters the board at that point, and once again, because the whole issue, I believe, was lazy eye. It's a medical term, good or bad. But we do know medically any eye injury is going to progressively get worse. So if it has gotten to that point, perhaps the decision will change. Perhaps it won't. But what is the harm in remanding? And with that, I thank you very much. It was an honor being appointed by this court. All right. We would also like to, I would like to thank both counsel for their argument, and we are particularly grateful as a court for those that agreed to do pro bono work for this court. And so we would like to publicly acknowledge that, and thank you both for your arguments. Thank you. And that is now submitted. Submitted.
judges: D.W. Nelson, Callahan, Carney